**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
**JUDGE**

**LETTER OPINION**

December 4, 2006

Dal B. Abuel
92 Danforth Avenue
Apt. 306
Jersey City, NJ 07305
*Plaintiff*, *Pro-se*

Frederick A. Nicoll
Dorsey & Whitney, LLP
95 Route 17 South
Suite 203
Paramus, NJ 07652
*Attorney for Defendant*

      Re:    Abuel v. U.S. Bank Nat'l Assoc., ND
              Civil Action No. 06-1912 (WJM)

Dear Litigants:

     This case comes before the Court both on *pro-se* Plaintiff's July 17, 2006 motion for a default judgment and Defendant's August 28, 2006 cross-motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiff failed to respond to the cross-motion. Plaintiff, a credit-card holder, filed the Complaint on April 24, 2006 under an unspecified "Consumer Credit Protection Act" against Defendant, his issuing bank, for alleged improper charges and both changes to his credit reports and harassment related to those charges. Plaintiff seeks damages of $100,000, punitive damages of $100,000 and "moral damages" of an additional $100,000. The Court adjudicates this matter on the papers. Fed. R. Civ. P. 78. For the reasons outlined below, the Court will **DENY** Plaintiff's motion for default and **GRANT** Defendant's Motion to Dismiss.

**BACKGROUND**

     Plaintiff was a member of America Online ("AOL") paying a monthly fee automatically charged to his U.S. Bank Visa card. On May 23, 2003, Plaintiff closed his AOL account; the closure was confirmed in a May 24, 2003 letter from AOL. Despite having closed the AOL account, Plaintiff

continued to receive the monthly AOL charge on his Visa bill.  According to the Complaint, Plaintiff closed his U.S. Bank Visa card account on March 22, 2004 because of this continuing charge; he notified U.S. Bank by letter on April 29, 2004 that any further charges to the card should be considered unauthorized.  On May 17, 2004, Defendant received a letter from Defendant's "Cardmember Services" informing Plaintiff that the bank would be unable to stop any continuing AOL charges to his card and he should contact AOL to resolve his dispute.  The letter further outlined that U.S. Bank was closing the dispute and Plaintiff would remain liable for any charges.

On June 18, 2005, U.S. Bank notified Plaintiff by letter that he had an outstanding balance on his card of $230.03, an amount due of $149.00, and that he must arrange to pay the amount due immediately in order to avoid possible legal action.  The letter further outlined that Plaintiff had ignored repeated requests to pay the delinquent account.

In an October 19, 2005 letter, Citibank informed Plaintiff that his Citibank credit card limit had been decreased on July 15, 2005 based on "derogatory references from other creditors."  There was no explanation as to the content of these negative references.  The letter went on to explain, however, that because his Trans Union credit bureau report no longer reflected such "derogatory information," his credit line was being reinstated to $15,500.00

In a separate October 19, 2005 correspondence, Defendant explained to Plaintiff that he was responsible for any charges made by AOL before he canceled his AOL service.  The letter went on to state that, as a courtesy, interest and fees in the amount of $100.82 were reversed; but the remainder of Plaintiff's account was unpaid and "charged off" on July 29, 2005.

On December 8, 2005, Plaintiff was informed by letter from MBNA America that his application for an MBNA American Express card was denied because they determined he had "current or past delinquency with one or more of [his] creditors" on his Trans Union credit report.

On December 27, 2005, Plaintiff received a letter from Capital One denying his application because he was "not eligible since you applied with us in the last ninety days."  The letter says that Capital One did not request or review a copy of Plaintiff's credit report.

Plaintiff filed the Complaint on April 24, 2006; and on May 1, 2006, Lisa M. Bessler of U.S. Bank signed a waiver of service on May 1, 2006.  On May 22, 2006, Defendant's paralegal, Marilyn J. Doyle, then sent correspondence to Plaintiff analyzing his Complaint and exhibits and asking him to call Ms. Doyle to discuss the allegations in the Complaint.  Plaintiff responded by letter on May 31, 2006 that he received the letter and waiver of service.  Defendant then replied on June 12, 2006 and again on June 23, 2006 outlining that, in addition to the action taken in October 19, 2005:

> Steps were taken so your U.S. Bank account . . . now has a zero balance.  The slate is clear and you owe nothing to U.S. Bank on [this] account.  U.S. Bank updated your credit bureau.  There is no reporting by U.S. Bank.  Any adverse/derogatory references which may have been attributed to U.S. Bank which may have existed per your complaint . . . have been eliminated.

Defendant attached to these letters a notice of dismissal for Plaintiff's potential signature.

**DISCUSSION**

    **I.    Standards of Review**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Zynn v. O'Donnell*, 688 F.2d 940, 941 (3d Cir. 1982).

The Court also recognizes the long-standing practice of construing *pro-se* plaintiffs' pleadings liberally. *See, e.g. U.S. v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999). Moreover, when a motion to dismiss involves a *pro-se* plaintiff, the court must "find that it is clear 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Zynn v. O'Donnell*, 688 F.2d at 941 (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)).

    **II.    The Motion for Default Must be DENIED**

As an initial point, this motion for a default judgment is procedurally improper and must be denied because Plaintiff never moved for entry of default as required under F.R.C.P. 55(a), nor has the Clerk of the Court entered default. *See Abady v. Twp. of Manalapan*, Civ. No. 06-1419, 2006 WL 1877129 at *1 (D.N.J. July 6, 2006). However, even had Plaintiff followed proper procedure, the Court would still exercise its discretion to deny the motion. When an application is made to the court for entry of a default judgment under Rule 55(b)(2):

> [T]he district judge is required to exercise 'sound judicial discretion' in deciding whether the judgment should be entered. 'This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a).'"

*Franklin v. Nat'l Mar. Union of America*, (MEBA/NMU), et al., Civ. A. No. 91-480, 1991 WL 131182 at *1 (D.N.J. July 16, 1991) (citing 10 Wright, Miller & Kane, Fed. Practice and Procedure § 2685 (1983)).

The Third Circuit, in the context of reviewing motions to vacate default, has distilled four key points for consideration: (1) whether lifting default would prejudice the plaintiff; (2) whether the defendant has a *prima facie* meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions. *Emasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987). In addition, courts in this district have also considered whether a

3

default is largely technical or was the result of a good faith mistake. *See, e.g., Franklin* 1991 WL 131182 at *1.

It is clear that Defendants satisfy these factors in opposing Plaintiff's motion for default. No discovery or other process has taken place or been foregone that would prejudice Plaintiff if default is denied. Defendant presents meritorious defenses in its motion to dismiss that satisfy the second factor. The evidence of telephone conversations and correspondence presented in their opposition to the motion for default shows that Defendant was going forward in good faith during the time it should have answered. Finally, default would be overly harsh and costly to Defendant. Therefore, on the merits, default would be denied as well.

## II. The Motion to Dismiss Must be GRANTED

The Court wishes to be clear at the outset that in reviewing Defendant's motion to dismiss, it has only considered the Complaint and those appropriate documents and exhibits attached to the Complaint. Although Defendant submitted to the Court declaration and correspondence evidence in support of its opposition to Plaintiff's motion for a default judgment, the Court did not apply any of this evidence in its review of the cross-motion to dismiss.

Although, Plaintiff fails to outline the precise consumer statute under which he seeks protection, the Court can find no cause of action under either the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C.A. § 1692, or the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.A. § 1681. Firstly, the FDCPA only authorizes a cause of action against a third-party collection agency or a primary lender also seeking collection under another name. 15 U.S.C.A. §§ 1692a-k; *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). The Complaint alleges neither situation.

The FCRA, on the other hand only allows a private cause of action "where the furnisher of information receives notice of a dispute directly from a consumer reporting agency, as opposed to from the consumer." *Lorenzo v. Palisades Collection, LLC*, No. 05-0886WJM, 2006 WL 891170 at *2 (D.N.J. 2006); 15 U.S.C.A. §§ 1681s-2(a)-(b). Again, no such claim was alleged in the Complaint.

Finally, the Complaint does not specifically outline any state law causes of action. However, even if some state law causes of action could be found, the Federal questions under which this Complaint was brought in Federal court will all be dismissed; therefore, the Court declines to exercise supplemental jurisdiction over any remaining state law claims. *Stehney v. Perry*, 101 F.3d 925, 939 (3d Cir. 1996); *Brown v. Brown*, No. Civ. 03-1520(GEB), 2005 WL 1279181 at *6 (D.N.J. May 31, 2005).

## CONCLUSION

In sum, because default has not yet been entered the Court must **DENY** Plaintiff's motion for default judgment. Furthermore, because no cause of action can be found for Plaintiff under either the FDCPA or FCRA the Court will **GRANT** Defendant's motion and **DISMISS** the case in its entirety.

                                                  s/ William J. Martini
                                                  **William J. Martini, U.S.D.J.**